UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at GREENVILLE

TERENCE BARRY, TDOC No.  358202     )
     )
v.     )     NO.  2:13-cv-138
     )     *Greer/Inman*
KIMBERLY GENTRY, I. P. O.     )

**MEMORANDUM and ORDER**

Acting *pro se*, Terence Barry, a prisoner housed in the Northeast Correctional Complex in Mountain City, Tennessee, brings this civil rights action for damages under 42 U.S.C. § 1983, alleging that his constitutional rights were violated by events which occurred in connection with the parole consideration process, (Doc. 1).  The sole defendant is Institutional Parole Officer Kimberly Gentry.

Because plaintiff is a prisoner who is proceeding *in forma pauperis*, the Court must review the complaint and dismiss it if it is frivolous or malicious; fails to state a claim; or names defendants who are immune from suit.  28 U.S.C. § 1915A and § 1915(e).  In performing this task, the Court bears in mind that *pro se* pleadings must be generously construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S.  89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  Still, the complaint must be sufficient "to state a claim to relief that is plausible on its face," meaning that the contentions of facts offered in support must show a right to relief beyond a "speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

According to the face of the complaint, plaintiff was favorably considered for parole on November 29, 2012, conditioned on his exhibiting good institutional behavior for six months, with his parole date set for May 13, 2013. Plaintiff alleges that he earned his release on parole, but has been thwarted from finishing the remainder or his sentence on the streets due to an administrative snafu caused by defendant Gentry. According to plaintiff, his release on parole was delayed when defendant took it upon herself to submit an ISC (interstate compact & home plan), knowing that plaintiff's first home plan would be denied. Plaintiff and his wife notified defendant of an address change the first week of March, but defendant waited until April 9, 2013, to inform plaintiff that his first home plan had been denied.

To compound her mistake, defendant waited until two weeks later to file plaintiff's new home plan.[1] And defendant's filing of the new home plan occurred only after numerous calls from plaintiff's wife concerning her husband's parole. Plaintiff charges that defendant's errors have prevented him from being paroled on May 13, 2013, and worked a denial of his right to due process of law. He seeks $3,500 for each day he is held beyond May 13, 2013, and an additional $70,000 for the deprivation of his liberty and the emotional injuries resulting from the due process infringements.

The Fourteenth Amendment forbids state actors to "deprive any person of life, liberty or property without due process of law [.]" U.S. Const. amend. XIV, § 1. A procedural due

---

[1] Plaintiff has attached paperwork to his complaint which explains that the address contained in his original home plan was his granddaughter's but that, before a home visit could occur, she moved to another location, (Doc. 1 at 9). His granddaughter's relocation required plaintiff to request approval for a new address, perhaps prompting further delay of his release on parole.

2

process claim, such as the one alleged here, is composed of two elements. A plaintiff must show that he enjoyed a protected liberty interest and that the process owed him before depriving him of the interest was denied. *See Board of Regents v. Roth*, 408 U.S. 564, 569-570 (1972). The first element is the one which is missing here.

A liberty interest arises either from the Due Process Clause in the Fifth or Fourteenth Amendment of the Constitution or from the rights conferred by a state. The possibility of obtaining parole is not a right secured by the U.S. Constitution. *Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1 (1979). However, a state may create a liberty interest in parole through means of its parole scheme, and, in *Mayes v. Trammell*, 751 F.2d 175 (6th Cir. 1984), the United States Court of Appeals for the Sixth Circuit held Tennessee had so done.

But Tennessee amended its parole regime in 1985 and discarded any entitlement to parole which had inhered in the predecessor statute. This circuit reached that very conclusion in *Wright v. Trammell,* 810 F.2d 589 (6th Cir.1987), by finding that, under the statute as rewritten, Tennessee inmates no longer possessed a liberty interest in parole. *Greenholtz* and *Wright* together establish that a prisoner has no protectible liberty interest in obtaining parole, under the U.S. Constitution or Tennessee law. *See Seagraves v. Tennessee Board of Probation & Parole*, 86 Fed. Appx. 45, 2003 WL 22976652, *2 (6th Cir. Dec. 8, 2003) (finding no liberty interest in parole in Tennessee) (citing to *Greenholtz* and *Wright*); *Rowan v. Traughber,* 48 Fed. Appx. 489, 2002 WL 31085197 (6th Cir. 2002) (same).

As the cited cases and the above analysis show, Plaintiff has failed to demonstrate he had a right to release on parole protected by the Constitution or state law. *Bell v. Anderson,*

3

301 Fed. Appx. 459, 461, 2008 WL 4935941, *2 (6th Cir. Nov. 18, 2008) (where parole is purely discretionary under state law, "a convicted person has no legitimate claim of entitlement to parole before the expiration of a valid sentence of imprisonment---and thus no liberty interest in being paroled"); *Toussaint v. McCarthy*, 801 F.2d 1080, 1092 (9th Cir. 1986) ("A state-created liberty interest exists only as long as the statute or regulation creating it remains effective[; i]f the state repeals the statute or eliminates the regulation, the liberty interest ceases to exist."), *abrogated in part on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995). Put simply, plaintiff has no liberty interest in obtaining parole which demands due process protection. Plaintiff has failed to state a claim entitling him to relief under § 1983.

Even if plaintiff had such an interest, he could not obtain money damages from defendant in her official capacity, since a state employee, such as Ms. Gentry, enjoys absolutely immunity from § 1983 liability for such damages pursuant to the Eleventh Amendment of the U.S. Constitution. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Nor could plaintiff collect money damages for any emotional injuries inflicted as a result of the "administrative glitch" complained of since a prisoner may not bring a claim for emotional or mental damages absent a showing of prior physical injury. *See* 42 U.S.C. § 1997e(e). Here, plaintiff has not claimed he suffered any physical injury as a result of defendant's alleged wrongful conduct, and, thus, § 1997e(e) does not permit him to bring these particular claims for damages.

For all these reasons, this action will be **DISMISSED** *sua sponte* by separate order.

One final note is in order. Had plaintiff stated arguable § 1983 claims, the Court would have allowed him to amend, but since the noted deficiencies are not remediable by amendment, it would be futile to invite an amended complaint. *LaFountain v. Harry*, __ F.3d __ , 2013 WL 2221569 (6th Cir. May 22, 2013).

          **ENTER**:

s/J. RONNIE GREER<br>
UNITED STATES DISTRICT JUDGE